IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EDDY PRODUCE LLC d/b/a B & D MARKETING, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:12-CV-00316-N |
| SUTTON FRUIT & VEGETABLE CO., *et al.*, | § § § § | |
| Defendants. | § | |

## **MEMORANDUM OPINION**

This Opinion addresses Plaintiffs Eddy Produce LLC d/b/a B & D Marketing ("Eddy"), Ward Thomas d/b/a Majestic Produce Sales Company ("Thomas"), Bagley Produce Company, Inc. ("Bagley"), and Sun Fresh Farms, Inc.'s ("Sun Fresh") ex parte application for a temporary restraining order or for preliminary injunction [10]. For the reasons that follow, the Court grants Thomas' application for a temporary restraining order ("TRO") pending its consideration of his preliminary injunction motion, but it denies Eddy, Bagley, and Sun Fresh's applications for TROs. Thus, as stated in the Court's TRO, the Court enjoins Defendants Sutton Fruit & Vegetable Company, Christopher Sutton, Keith Sutton, Kenneth Sutton, and Donald Johnson (collectively "Sutton") from dissipating any funds they hold in constructive trust on Thomas' behalf under the Perishable Agricultural

ORDER – PAGE 1

Commodities Act ("PACA")[1] until the earlier of: (1) fourteen (14) days from the date of the TRO, or (2) the Court rules on Thomas' motion for a preliminary injunction.

## I. ORIGINS OF PLAINTIFFS' TRO REQUESTS

Plaintiffs filed suit to recoup funds from Sutton, an enterprise which "buy[s] and sell[s] wholesale quantities [of] produce in interstate commerce" and a licensed PACA dealer.[2] Pls.' Compl. ¶ 7 [1]; *see* Pls.' Br. Supp. Pls.' Application TRO 6-7 [11] [hereinafter Pls.' Br. Supp.].[3] In a series of transactions, Plaintiffs allegedly sold Sutton $410,107.46 in produce.[4] However, according to Plaintiffs, Sutton has refused to tender payment and now avers that it does not "have sufficient cash or other assets to fully pay for the commodities." Pls.' Br. Supp. 2. Plaintiffs argue that Sutton holds the unpaid amount in a statutorily-established constructive trust under PACA. In conjunction with filing suit, Plaintiffs seek a TRO because they fear that "[Sutton is] insolvent or on the verge of insolvency and/or [is] dissipating the trust assets[,] . . . [and] Plaintiffs will be irreparably harmed by the continued dissipation of trust assets if [Sutton is] not restrained from spending, diverting[,] or distributing any funds before a hearing can be held on Plaintiffs' complaint." Pls.' Br. Supp. 12.

---

[1] Codified as amended at 7 U.S.C. § 499a, *et seq.*

[2] *See* Pls.' App. to Pl.'s Application TRO, Ex. 2, at 1-3 [10-2].

[3] Sutton's officers and directors include Defendants Christopher Sutton, Keith Sutton, Kenneth Sutton, and Donald Johnson. *See* Pls.' Br. Supp. 6.

[4] Plaintiffs claim they sold Sutton produce in the following amounts: Bagley Produce Company, $154,212.33; Eddy Produce LLC d/b/a B & D Marketing, $71,247.50; Ward Thomas d/b/a Majestic Produce Sales, $7,095.13; and Sun Fresh Farms, Inc., $177,552.50; for a total of $410,107.46. *See* Pls.' Compl. ¶ 10.

## II. PACA CREATES A CONSTRUCTIVE TRUST

As the Fifth Circuit has emphasized repeatedly, Congress intended for PACA to be a "tough law." *See, e.g.*, *Hawkins v. Agric. Mktg. Serv., Dep't of Agric.*, 10 F.3d 1125, 1130-31 (5th Cir. 1993). Indeed, the legislative history states:

> [Congress] enacted [PACA] in 1930 for the purpose of providing a measure of control and regulation over a branch of industry which is engaged almost exclusively in interstate commerce, which is highly competitive, and in which the opportunities for sharp practices, irresponsible business conduct, and unfair methods are numerous. The law was designed primarily for the protection of producers of perishable agricultural products – most of whom must entrust their products to a buyer or commission merchant who may be thousands of miles away[] and depend for their payment upon his business acumen and fair dealing – and for the protection of consumers who frequently have no more than the oral representation of the dealer that the product they buy is of the grade and quality they are paying for.

*Id.* (quoting H.R. REP. NO. 1196 (1956), *reprinted in* 1956 U.S.C.C.A.N. 3699, 3701). Over time, Congress became increasingly concerned with an "increase in the number of buyers who failed to pay, or were dilatory in paying, their suppliers, and the impact of such payment practices on small suppliers who could not withstand a significant loss or delay in receipt of monies owed." *Tanimura & Antle, Inc. v. Packed Fresh Produce*, 222 F.3d 132, 135 (3d Cir. 2000) (citing H.R. REP. NO. 98-543, at 3 (1983), *reprinted in* 1984 U.S.C.C.A.N. 405, 406).

Accordingly, in 1984, Congress amended PACA to include a constructive trust provision "under which a produce dealer holds its produce-related assets as a fiduciary until full payment is made to the produce seller." *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 156 (11th Cir. 1990); *see also* 7 C.F.R. § 46.46. "The trust automatically arises in favor of a produce seller upon delivery of produce. An unpaid seller loses the benefits of the trust unless it files written notice of its intent to preserve its rights with the United States

Department of Agriculture and the produce dealer," *id.* (citing 7 U.S.C.A. §§ 499e(c)(2) & (c)(3) (West Supp. 1990)), or provides such notice on its "ordinary and usual billing or invoice statements," 7 U.S.C. § 499e(c)(4). Both trust beneficiaries and the Secretary of Agriculture may sue in federal district court to enforce PACA's constructive trust provisions. 7 U.S.C. § 499e(c)(5).

### III. TEMPORARY RESTRAINING ORDER STANDARD

"The prerequisites for preliminary injunctive relief are long-established in this circuit." *Libertarian Party of Tex. v. Fainter*, 741 F.2d 728, 729 (5th Cir. 1984). A plaintiff seeking preliminary injunctive relief must demonstrate (1) a substantial threat that it will suffer irreparable injury; (2) a substantial likelihood of success on the merits;[5] (3) that the threatened injury to plaintiff outweighs any threatened harm to the defendant; and (4) granting injunctive relief will not disserve the public interest. *Id.* The party seeking preliminary injunctive relief carries the burden of persuasion on all four requirements. *Bluefield Water Assoc., Inc. v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009).

"Ex parte temporary restraining orders . . . should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing . . . ." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415

---

[5]In the TRO context, the necessary persuasiveness of a plaintiff's likelihood-of-success showing "varies, and often may depend on the facts in a particular case." 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2951, at 266-67 (2d ed. 1995). A TRO movant must show "at least a reasonable probability of prevailing on the merits." *Id.* at 266.

U.S. 423, 439 (1974). Under Federal Rule of Civil Procedure 65(b), a court may grant a restraining order without notice to the adverse party if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1).

### IV. THE COURT GRANTS THOMAS' TRO REQUEST BUT DENIES EDDY, BAGLEY, AND SUN FRESH'S TRO REQUESTS

*A. Thomas Satisfies the Requirements for a TRO*

Thomas meets the Fifth Circuit's four requirements for preliminary injunctive relief and satisfies Rule 63(b)'s requirements for an ex parte TRO. First, Thomas demonstrates a substantial threat of irreparable injury absent an interim TRO. Throughout Plaintiffs' brief, Thomas and the other Plaintiffs assert that they fear Sutton lacks sufficient funds to pay their invoices and that it has and will continue to dissipate PACA trust funds held on Plaintiffs' behalf. *See* Pls.' Br. Supp. 2, 12. Thomas has submitted an affidavit stating that he has been in contact with Keith Sutton in an effort to seek payment on his outstanding invoices and that "Mr. Sutton informed me via electronic mail that Sutton's bank was calling [in] its financing [] and [] therefore [Sutton is] unable to pay Majestic and its other PACA suppliers." *See* Pls.' App. to Pl.'s Application TRO, Ward Thomas Decl., Ex. 1, at 1 [10-1]; *see also* Pls.' App. to Pls.' Application TRO, Ex. 1, at 6 (alleged email from Keith Sutton to Ward Thomas). "Courts have recognized that once the PACA trust is dissipated, it is almost impossible for a beneficiary to obtain recovery. Thus, the prevention of trust dissipation becomes essential

ORDER – PAGE 5

to any meaningful remedy." *Tanimura*, 222 F.3d at 139, 140-41 (citing legislative history and *Frio Ice*, 918 F.2d at 159, and collecting cases holding that trust dissipation satisfies irreparable injury element).

Second, Thomas has shown a substantial likelihood of success on his constructive trust claim. Thomas has produced evidence demonstrating that (1) he sold Sutton $7,095.13 in produce;[6] (2) each of his invoices contained the statutorily-required notice to preserve his interest in the trust;[7] and (3) Sutton has not paid Thomas for the produce.[8] *See Rio Bravo Produce, Ltd. v. Superior Tomato-Avocado, Ltd.*, 2011 WL 6938450, at *3 (W.D. Tex. 2011); *see also Sanzone Brokerage, Inc. v. J&M Produce Sales, Inc.*, 547 F. Supp. 2d 599, 602 (N.D. Tex. 2008) (Means, J.); *Ideal Sales, Inc. v. McGriff*, 1997 WL 148043, at * 3 (N.D. Tex. 1997) (Buchmeyer, C.J.) (summary judgment). PACA's implementing regulations place an affirmative duty on dealers like Sutton "to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities." 7 C.F.R. § 46.46(d)(1). Accordingly, Sutton's failure

---

[6]Thomas attached invoices to Sutton totaling $7,095.13. *See* Pls.' App. to Pls.' Application TRO, Ex. 1, at 3-5.

[7]Each invoice states:
The Perishable Agricultural Commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. [§] 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from the commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.
*See* Pls.' App. to Pls.' Application TRO, Ex. 1, at 3-5.

[8]Thomas submitted a notarized affidavit stating that Sutton has not paid him for the watermelons that Thomas shipped to Sutton from October 7, 2011 to January 13, 2012. *See* Pls.' App. to Pls.' Application TRO, Ward Thomas Decl., Ex. 1, at 1.

ORDER – PAGE 6

to pay Thomas presents prima facie evidence that it has violated PACA's constructive trust provisions.

Third, the balance of harms currently favors Thomas. Congress specifically designed PACA to benefit producers like Thomas. And, as Sutton allegedly continues to dissipate trust funds, Thomas' risk of never receiving payment grows greater.

Fourth, granting the TRO request will serve the public interest. PACA promotes the public interest by prohibiting practices such as "fail[ing] or refus[ing] truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had; or . . . fail[ing] to maintain the trust." 7 U.S.C. § 499b(4); *cf. Sanzone*, 547 F. Supp. 2d at 603 (noting that PACA, by its own terms, protects the public interest (citing 7 U.S.C. § 499e(c)(1))). Sutton's alleged nonpayment, therefore, is a practice Congress specifically intended to prohibit by enacting PACA.

Finally, Thomas satisfies Rule 65(b)'s requirements for the Court to issue the TRO ex parte. Thomas' counsel signed and filed his ex parte application for temporary restraining order, detailing counsel's efforts to notify Sutton of the application and explaining how counsel has been unable to do so. *See* Pls.' Application TRO 3. Thomas' affidavit and the attached email allegedly between Keith Sutton and Thomas demonstrate that Sutton will likely pay its other creditors quickly, before paying Thomas. *See* Pls.' App. to Pls.' Application TRO, Ex. 1, at 1, 6. This showing is sufficient under Federal Rule of Civil Procedure 65(b). *See* FED. R. CIV. P. 65(b)(1)(B); *cf. Rio Bravo Produce, Ltd.*, 2011 WL

6938450, at *3 (plaintiff's brief in support which counsel signed, supported by plaintiff's affidavit, satisfied Rule 65(b)'s requirements).

### *B. Eddy, Bagley, and Sun Fresh Fail to Satisfy the Requirements for a TRO*

The remaining Plaintiffs, with the help of Thomas' affidavit and for the same reasons the Court gives for granting Thomas' TRO, demonstrate (1) a substantial threat that they will suffer irreparable injury, (2) that the threatened injury to them outweighs any threatened harm to Sutton, and (3) that granting injunctive relief is in the public interest.

However, Eddy, Bagley, and Sun Fresh have not provided sufficient evidence to demonstrate a likelihood of success on the merits. To reiterate, success on the merits requires each plaintiff to show that (1) the plaintiff sold Sutton a certain amount of produce; (2) each of the plaintiff's invoices contained the statutorily-required notice to preserve its interest in the trust; and (3) Sutton has not paid the plaintiff for its produce. *See Rio Bravo*, 2011 WL 6938450, at *3; *see also Sanzone*, 547 F. Supp. 2d at 602; *Ideal Sales*, 1997 WL 148043, at *3. Eddy and Bagley have provided documents which appear to be invoices and balance sheets purporting to show that they sold Sutton produce for certain monetary amounts.[9] However, Eddy and Bagley have not provided any authentication, in the form of affidavits, a verified complaint, or otherwise, showing that (a) the documents they provide are indeed invoices or true and correct balance sheets or (b) Sutton has not paid the money it allegedly

---

[9]*See* Pls.' App. to Pls.' Compl., Exs. 2-3 [1-2, 1-3]. The alleged invoices contain the statutorily-required PACA notice. *See id.*

owes them. Sun Fresh has also provided documents which appear to be invoices;[10] however, it has neither provided authenticated balance sheets nor any authenticating document or verified complaint to support the alleged invoices. Accordingly, Eddy, Bagley, and Sutton fail to establish a likelihood of success on the merits, and the Court cannot grant their applications.[11]

### CONCLUSION

The Court grants Thomas' application for a TRO, and it denies Eddy, Bagley, and Sun Fresh's applications for a TRO without prejudice. The Court sets a hearing on February 21, 2012 at 4:00 p.m. in Courtroom 1505 to hear all of the Plaintiffs' motions for preliminary injunction.

Signed February 7, 2012.

_____
David C. Godbey
United States District Judge

---

[10]*See* Pls.' App. to Pls.' Compl., Ex. 5 [1-5]. The alleged invoices contain the statutorily-required PACA notice. *See id.*

[11]In light of this ruling, the Court need not consider whether Eddy, Bagley, and Sun Fresh meet Rule 65(b)'s requirements for the Court to issue an ex parte TRO.

ORDER – PAGE 9