IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EDDY PRODUCE LLC d/b/a B & D MARKETING, *et al.*, | § § § § § | |
| Plaintiffs, | § | |
| v. | § § | Civil Action No. 3:12-CV-00316-N |
| SUTTON FRUIT & VEGETABLE CO., *et al.*, | § § § § | |
| Defendants. | § | |

## **MEMORANDUM OPINION**

This Opinion addresses Plaintiffs Eddy Produce LLC d/b/a B & D Marketing ("Eddy"), Bagley Produce Company, Inc. ("Bagley"), and Sun Fresh Farms, Inc.'s ("Sun Fresh") motion to amend their ex parte applications for temporary restraining orders ("TRO") or for preliminary injunctions [15]. For the reasons that follow, the Court (1) grants Eddy, Bagley, and Sun Fresh's motion and (2) grants their applications, as amended, for TROs [10] pending its consideration of their preliminary injunction motions. Thus, as stated in the Court's TRO of this same date, the Court enjoins Defendants Sutton Fruit & Vegetable Company, Christopher Sutton, Keith Sutton, Kenneth Sutton, and Donald Johnson (collectively "Sutton") from dissipating any funds they hold in constructive trust on Eddy, Bagley, or Sun Fresh's behalf under the Perishable Agricultural Commodities Act

ORDER – PAGE 1

("PACA")[1] until the earlier of: (1) fourteen (14) days from the date of the TRO, or (2) the Court rules on their motions for preliminary injunctions.

## I. ORIGINS OF PLAINTIFFS' MOTION AND TRO REQUESTS

Plaintiffs filed suit to recoup funds from Sutton, an enterprise which "buy[s] and sell[s] wholesale quantities [of] produce in interstate commerce" and a licensed PACA dealer.[2] Pls.' Compl. ¶ 7 [1]; *see* Pls.' Br. Supp. Pls.' Appl. TRO 6-7 [11] [hereinafter Pls.' Br. Supp.].[3] In a series of transactions, Plaintiffs allegedly sold Sutton $410,107.46 in produce.[4] However, according to Plaintiffs, Sutton has refused to tender payment and now avers that it does not "have sufficient cash or other assets to fully pay for the commodities." Pls.' Br. Supp. 2. Plaintiffs argue that Sutton holds the unpaid amount in a statutorily-established constructive trust under PACA. In conjunction with filing suit, Plaintiffs seek a TRO because they fear that "[Sutton is] insolvent or on the verge of insolvency and/or [is] dissipating the trust assets[,] . . . [and] Plaintiffs will be irreparably harmed by the continued dissipation of trust assets if [Sutton is] not restrained from spending, diverting[,] or

---

[1]Codified as amended at 7 U.S.C. § 499a, *et seq.*

[2]*See* Pls.' App. to Pls.' Appl. TRO, Ex. 2, at 1-3 [10-2].

[3]Sutton's officers and directors include Defendants Christopher Sutton, Keith Sutton, Kenneth Sutton, and Donald Johnson. *See* Pls.' Br. Supp. 6.

[4]Plaintiffs claim they sold Sutton produce in the following amounts: Bagley, $154,212.33; Eddy, $71,247.50; Ward Thomas d/b/a Majestic Produce Sales, $7,095.13; and Sun Fresh, $177,552.50; for a total of $410,107.46. *See* Pls.' Compl. ¶ 10.

distributing any funds before a hearing can be held on Plaintiffs' complaint." Pls.' Br. Supp. 12.

The Court granted Plaintiff Ward Thomas d/b/a Majestic Produce Sales Company's ("Thomas") ex parte application for a TRO on February 7, 2012. *See* Mem. Op., Feb. 7, 2012 [12]; TRO, Feb. 7, 2012 [13]. However, the Court denied, without prejudice, Eddy, Bagley, and Sun Fresh's applications as they had not provided sufficient evidence to demonstrate a likelihood of success on the merits, one of the prerequisites for injunctive relief. Eddy, Bagley, and Sun Fresh have now filed the present motion to amend which includes supplemental evidence to support their TRO applications.

## II. PACA CREATES A CONSTRUCTIVE TRUST

As the Fifth Circuit has emphasized repeatedly, Congress intended for PACA to be a "tough law." *See, e.g.*, *Hawkins v. Agric. Mktg. Serv., Dep't of Agric.*, 10 F.3d 1125, 1130-31 (5th Cir. 1993). Indeed, the legislative history states:

> [Congress] enacted [PACA] in 1930 for the purpose of providing a measure of control and regulation over a branch of industry which is engaged almost exclusively in interstate commerce, which is highly competitive, and in which the opportunities for sharp practices, irresponsible business conduct, and unfair methods are numerous. The law was designed primarily for the protection of producers of perishable agricultural products – most of whom must entrust their products to a buyer or commission merchant who may be thousands of miles away[] and depend for their payment upon his business acumen and fair dealing – and for the protection of consumers who frequently have no more than the oral representation of the dealer that the product they buy is of the grade and quality they are paying for.

*Id.* (quoting H.R. REP. NO. 1196 (1956), *reprinted in* 1956 U.S.C.C.A.N. 3699, 3701). Over time, Congress became increasingly concerned with an "increase in the number of buyers

who failed to pay, or were dilatory in paying, their suppliers, and the impact of such payment practices on small suppliers who could not withstand a significant loss or delay in receipt of monies owed." *Tanimura & Antle, Inc. v. Packed Fresh Produce*, 222 F.3d 132, 135 (3d Cir. 2000) (citing H.R. REP. NO. 98-543, at 3 (1983), *reprinted in* 1984 U.S.C.C.A.N. 405, 406).

Accordingly, in 1984, Congress amended PACA to include a constructive trust provision "under which a produce dealer holds its produce-related assets as a fiduciary until full payment is made to the produce seller." *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 156 (11th Cir. 1990); *see also* 7 C.F.R. § 46.46. "The trust automatically arises in favor of a produce seller upon delivery of produce. An unpaid seller loses the benefits of the trust unless it files written notice of its intent to preserve its rights with the United States Department of Agriculture and the produce dealer," *Frio Ice*, 918 F.2d at 156 (citing 7 U.S.C.A. §§ 499e(c)(2) & (c)(3) (West Supp. 1990)), or provides such notice on its "ordinary and usual billing or invoice statements," 7 U.S.C. § 499e(c)(4). Both trust beneficiaries and the Secretary of Agriculture may sue in federal district court to enforce PACA's constructive trust provisions. 7 U.S.C. § 499e(c)(5).

### III. TEMPORARY RESTRAINING ORDER STANDARD

"The prerequisites for preliminary injunctive relief are long-established in this circuit." *Libertarian Party of Tex. v. Fainter*, 741 F.2d 728, 729 (5th Cir. 1984). A plaintiff seeking preliminary injunctive relief must demonstrate (1) a substantial threat that it will

suffer irreparable injury; (2) a substantial likelihood of success on the merits;[5] (3) that the threatened injury to plaintiff outweighs any threatened harm to the defendant; and (4) that granting injunctive relief will not disserve the public interest. *Id.* The party seeking preliminary injunctive relief carries the burden of persuasion on all four requirements. *Bluefield Water Assoc., Inc. v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009).

"Ex parte temporary restraining orders . . . should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing . . . ." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974). Under Federal Rule of Civil Procedure 65(b), a court may grant a restraining order without notice to the adverse party if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1).

### IV. THE COURT GRANTS EDDY, BAGLEY, AND SUN FRESH'S TRO REQUESTS

With the additional evidence attached to their motion to amend, Eddy, Bagley, and Sun Fresh meet the Fifth Circuit's four requirements for preliminary injunctive relief and

---

[5] In the TRO context, the necessary persuasiveness of a plaintiff's likelihood-of-success showing "varies, and often may depend on the facts in a particular case." 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2951, at 266-67 (2d ed. 1995). A TRO movant must show "at least a reasonable probability of prevailing on the merits." *Id.* at 266.

satisfy Rule 63(b)'s requirements for ex parte TROs. First, Eddy, Bagley, and Sun Fresh demonstrate a substantial threat of irreparable injury absent an interim TRO. Throughout Plaintiffs' brief, all Plaintiffs assert that they fear Sutton lacks sufficient funds to pay their invoices and that it has and will continue to dissipate PACA trust funds held on Plaintiffs' behalf. *See* Pls.' Br. Supp. 2, 12. Eddy, Bagley, and Sun Fresh have each submitted affidavits stating that (1) they have each been in contact with one of Sutton's directors or officers in an effort to seek payment on their outstanding invoices and that (2) one of Sutton's directors or officers has informed each of them that Sutton is unable to pay its PACA suppliers. *See* Pls.' App. to Pls.' Mot. to Amend, William E. McBryde Decl., Ex. 1 [15-1]; Pls.' App. to Pls.' Mot. to Amend, Jeff Fawcett Decl., Ex. 2 [15-2]; Pls.' App. to Pls.' Mot. to Amend, James Carlton Decl., Ex. 3 [15-3]. They also point to notices of bank foreclosure on two of Sutton's properties scheduling sales to occur on March 6, 2012. *See* Pls.' App. to Pls.' Mot. to Amend, William E. McBryde Decl., Ex. 1; Pls.' App. to Pls.' Mot. to Amend, Jeff Fawcett Decl., Ex. 2; Pls.' App. to Pls.' Mot. to Amend, James Carlton Decl., Ex. 3; *see also*, *e.g.*, Pls.' App. to Mot. to Amend, Ex. 1, at 3-11. "Courts have recognized that once the PACA trust is dissipated, it is almost impossible for a beneficiary to obtain recovery. Thus, the prevention of trust dissipation becomes essential to any meaningful remedy." *Tanimura*, 222 F.3d at 139, 140-41 (citing legislative history and *Frio Ice*, 918 F.2d at 159, and collecting cases holding that trust dissipation satisfies irreparable injury element).

Second, Eddy, Bagley, and Sun Fresh show a substantial likelihood of success on their constructive trust claims. They have each now produced evidence demonstrating that (1) they, collectively, sold Sutton $410,107.46 in produce;[6] (2) each of their invoices contained the statutorily-required notice to preserve their interests in the trust;[7] and (3) Sutton has not paid Eddy, Bagley, or Sun Fresh for the produce.[8] *See Rio Bravo Produce, Ltd. v. Superior Tomato-Avocado, Ltd.*, 2011 WL 6938450, at *3 (W.D. Tex. 2011); *see also Sanzone Brokerage, Inc. v. J&M Produce Sales, Inc.*, 547 F. Supp. 2d 599, 602 (N.D. Tex. 2008) (Means, J.); *Ideal Sales, Inc. v. McGriff*, 1997 WL 148043, at *3 (N.D. Tex. 1997) (Buchmeyer, C.J.) (summary judgment). PACA's implementing regulations place an affirmative duty on dealers like Sutton "to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities." 7 C.F.R. § 46.46(d)(1). Accordingly, Sutton's failure to pay Eddy, Bagley,

---

[6]Eddy, Bagley, and Sun Fresh have each submitted a notarized affidavit detailing the amount Sutton owes them. *See* Pls.' App. to Pls.' Mot. to Amend, William E. McBryde Decl., Ex. 1 ($71,247.50); Pls.' App. to Pls.' Mot. to Amend, Jeff Fawcett Decl., Ex. 2 ($154,212.33); Pls.' App. to Pls.' Mot. to Amend, James Carlton Decl., Ex. 3 ($177,552.50).

[7]*See* Pls.' App. to Pls.' Compl., Exs. 2-5 [1-2, 1-3, 1-5]. James Carlton, Sun Fresh's Sales Manager, has also affirmed that Sun Fresh held PACA license number 19961907 during all times at issue. *See* Pls.' App. to Pls.' Mot. to Amend, James Carlton Decl., Ex. 3, at 3.

[8]Eddy, Bagley, and Sun Fresh have each submitted a notarized affidavit stating that Sutton has not paid them for produce that they shipped to Sutton. *See* Pls.' App. to Pls.' Mot. to Amend, William E. McBryde Decl., Ex. 1; Pls.' App. to Pls.' Mot. to Amend, Jeff Fawcett Decl., Ex. 2; Pls.' App. to Pls.' Mot. to Amend, James Carlton Decl., Ex. 3.

and Sun Fresh presents prima facie evidence that it has violated PACA's constructive trust provisions.

Third, the balance of harms currently favors Eddy, Bagley, and Sun Fresh.  Congress specifically designed PACA to benefit producers like Eddy, Bagley, and Sun Fresh.  And, as Sutton allegedly continues to dissipate trust funds, their risk of never receiving payment grows greater.

Fourth, granting the TRO request will serve the public interest.  PACA promotes the public interest by prohibiting practices such as "fail[ing] or refus[ing] truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had; or . . . fail[ing] to maintain the trust." 7 U.S.C. § 499b(4); *cf. Sanzone*, 547 F. Supp. 2d at 603 (noting that PACA, by its own terms, protects the public interest (citing 7 U.S.C. § 499e(c)(1))).  Sutton's alleged nonpayment, therefore, is a practice Congress specifically intended to prohibit by enacting PACA.

Finally, Eddy, Bagley, and Sun Fresh satisfy Rule 65(b)'s requirements for the Court to issue the TRO ex parte.  Eddy, Bagley, and Sun Fresh's counsel signed and filed their ex parte applications for TRO, detailing counsel's efforts to notify Sutton of the application and explaining how counsel has been unable to do so.  *See* Pls.' Appl. TRO 3.  Eddy, Bagley, and Sutton's affidavits demonstrate that Sutton's assets will likely disappear quickly, before it pays Eddy, Bagley, and Sun Fresh.  *See* Pls.' App. to Pls.' Mot. to Amend, William E. McBryde Decl., Ex. 1; Pls.' App. to Pls.' Mot. to Amend, Jeff Fawcett Decl., Ex. 2; Pls.'

App. to Pls.' Mot. to Amend, James Carlton Decl., Ex. 3.  This showing is sufficient under Federal Rule of Civil Procedure 65(b).  *See* FED. R. CIV. P. 65(b)(1)(B); *cf. Rio Bravo Produce, Ltd.*, 2011 WL 6938450, at *3 (plaintiff's brief in support which counsel signed, supported by plaintiff's affidavit, satisfied Rule 65(b)'s requirements).

## CONCLUSION

The Court grants Eddy, Bagley, and Sun Fresh's applications for TRO.  The Court sets a hearing on February 21, 2012 at 4:00 p.m. in Courtroom 1505 to hear all of the Plaintiffs' motions for preliminary injunctions.

Signed February 14, 2012.

_____
David C. Godbey
United States District Judge